Stan Casper (State Bar No. 56705)
Thom Seaton (State Bar No. 6713)
**CASPER, MEADOWS & SCHWARTZ**
A Professional Corporation
California Plaza
2121 North California Blvd., Suite 1020
Walnut Creek, California 94596
Telephone: (925) 947-1147
Facsimile: (925) 947-1131

Toni Lisoni (Bar No. 124850)
1725 Canyon Run
Healdsburg, CA 95448
Telephone: (707) 473-0158

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN BELL; MARIE ANNETTE DIDIER; DENNIS M. LICKTEIG; DENISE NOACK; DANNY CARTER; LINDSEY MURRAY;<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF WALNUT CREEK, a Municipal Corporation; SCOTT DENISON; GARY POKORNY, And Does 1-50.<br><br>Defendants. | *Case No. C04-4031 EMC*<br><br>**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**<br><br>(42 U.S.C. § 1983)<br><br>JURY TRIAL DEMANDED |

**JURISDICTION AND VENUE**

1. Original jurisdiction exists by virtue of 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This action seeks relief under 42 U.S.C. 1983, a federal statute providing for suits to enforce civil rights. Supplemental jurisdiction exists over Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this District as provided by 28 U.S.C. § 1391 because at least one of the Defendants resides in this District and because all the acts of which Plaintiffs complain occurred in this District.

### JURY TRIAL DEMAND

3. Plaintiffs demand a jury trial of this action.

### THE PARTIES

4. Defendant City of Walnut Creek is a municipal corporation organized pursuant to the law of the State of California. The individual Defendants whom Plaintiffs have named in this action were, at all relevant times, and now are employees of the City of Walnut Creek. In doing the acts alleged, these defendants were implementing and enforcing the policies, practices and customs of the City of Walnut Creek.

5. Defendant Scott Denison is a resident of this District. At all times relevant Denison was and currently is General Manager of the Dean Lesher Regional Center for the Arts ("DLRCA") located in Walnut Creek, California. At all times relevant, Denison was and now is a senior policy maker for the City, also serving as Senior Performing Arts Supervisor. His alleged misconduct occurred within the course and scope of his employment with the City of Walnut Creek and he was acting under color of law. The Civil Rights claims which Plaintiffs allege against Denison are brought against Denison in both his individual and official capacities.

6. Defendant Gary Pokorny is a resident of this District. At all times relevant Pokorny was and currently is Director of Arts, Recreation and Community Services for the City of Walnut Creek. The Dean Lesher Regional Center for the Arts was and remains within the jurisdiction of his Department. At all times relevant, Pokorny was and now is a senior policy maker for the City. His alleged misconduct occurred within the course and scope of his employment with the City of Walnut Creek and he was acting under color of law. The Civil Rights claims which Plaintiffs allege against Pokorny are brought against Pokorny in both his individual and official capacities.

7. Plaintiffs are ignorant of the true names and capacities of defendants DOES 1 through 50, and therefore sue these defendants by such fictitious names. Plaintiffs will

amend their complaint when the true names and capacities of DOES 1 through 50 have been ascertained. Plaintiffs are informed and believe, and on that basis allege that defendants DOES 1 through 50 are responsible in some manner for the injuries suffered and damages incurred by plaintiffs, as alleged in this complaint. Any reference in this complaint to "defendant," "defendants," or to a specifically-named defendant refer also to defendants DOES 1 through 50.

8. Plaintiff Susan Bell is, and at all times mentioned, was an employee of the City of Walnut Creek holding the position of Ticket Office Manager of the Dean Lesher Regional Center for the Arts in Walnut Creek. She began her employment with the City of Walnut Creek on July 12, 1999, working at the DLRCA. Her senior supervisor at the DLRCA was and remains Scott Denison. At all times relevant, Scott Dennison controlled the conditions and environment of her employment.

9. Plaintiff Marie Annette Didier is, and at all times mentioned, was an employee of the City of Walnut Creek holding the position of Ticket Office Supervisor at the Dean Lesher Regional Center for the Arts in Walnut Creek. She began her employment with the City of Walnut Creek on October 17, 1994. She began working at the DLRCA in April 2001. Her senior supervisor at the DLRCA was and remains Scott Denison. At all times relevant, Scott Dennison controlled the conditions and environment of her employment.

10. Plaintiff Dennis Lickteig is, and at all times mentioned, was an employee of the City of Walnut Creek holding the position of Audience Services Coordinator at the Dean Lesher Regional Center for the Arts in Walnut Creek. He began his employment with the City of Walnut Creek on September 13, 1999, working at the DLRCA. His senior supervisor at the DLRCA was and remains Scott Denison. At all times relevant, Scott Dennison controlled the conditions and environment of his employment.

11. Plaintiff Denise Noack is, and at all times mentioned, was an employee of the City of Walnut Creek holding the position of Marketing Assistant at the Dean Lesher Regional Center for the Arts in Walnut Creek. She began her employment with the City of

**CASPER, MEADOWS & SCHWARTZ**
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

1  Walnut Creek on August 20, 1985.  She began working at the DLRCA in October 1989.
2  Her senior supervisor at the DLRCA was and remains Scott Denison.  At all times
3  relevant, Scott Dennison controlled the conditions and environment of her employment.

4     12.   Plaintiff Danny Carter at all times mentioned was an employee of the City of
5  Walnut Creek holding the position of Ticket Office Supervisor at the Dean Lesher
6  Regional Center for the Arts in Walnut Creek.  He began his employment with the City of
7  Walnut Creek on September 14, 1998, working at the DLRCA.  He was constructively
8  discharged from his employment on May 19, 2004.  His senior supervisor at the DLRCA
9  was Scott Denison.  At all times relevant, Scott Dennison controlled the conditions and
10 environment of his employment

11    13.   Plaintiff Lindsey Murray, at all times mentioned was an employee of the City
12 of Walnut Creek holding the position of Center Rep Marketing Director at the Dean
13 Lesher Regional Center for the Arts in Walnut Creek.  She began her employment with
14 the City of Walnut Creek on June 26, 2001, working at the DLRCA.  Her senior supervisor
15 at the DLRCA was Scott Denison.  She was constructively discharged from her
16 employment on February 11, 2004.  At all times relevant, Scott Dennison controlled the
17 conditions and environment of her employment.

18                **FACTS PRECIPITATING THIS ACTION**

19    14.   This suit focuses on the conduct of Scott Denison, General Manager of the
20 Dean Lesher Regional Center for the Performing Arts, the focal point for culture and the
21 arts in Walnut Creek.  The DLRCA is owned and operated by the City of Walnut Creek.
22 Nonetheless, as the following allegations demonstrate, Denison operated the Center as
23 his fiefdom and City officials deferred to, and repeatedly ratified his conduct, concerned
24 that the City retain the position it had gained by virtue of the DLRCA.

25    15.   In September 2002, Plaintiff Susan Bell met with Dolores Lundrum, who
26 handled conflict resolution issues for City personnel.  Bell told Lundrum of suspicions Bell
27 had about the manner in which Defendant Denison was handling funds, about her
28 concerns with Denison's nepotism, and about Denison's erratic and volatile behavior, all

**CASPER, MEADOWS
& SCHWARTZ**
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147

Complaint for Violation of Civil Rights                                                                                      Page 4

of which were adversely affecting the management and efficiency of the Center. By March 2003, after several more discussions with Bell, Lundrum understood the seriousness of the financial mismanagement issues which Bell had raised. Lundrum stated that she would raise the matter with Denison's supervisor, Defendant Pokorny. Bell gave Lundrum permission to identify Bell as the source of the financial concerns.

16. By October 2003, Plaintiffs Bell, Didier, Noack, Carter and Murray became sufficiently concerned about what they perceived as financial irregularities in Denison's management of the DLRCA and his erratic behavior and his possession of firearms in his office that they obtained an appointment with the Director of Administrative Services, Rosie Coan.

17. On October 6, 2003, these Plaintiffs met with Coan for over two hours The complained about what they perceived as financial irregularities which included, but were not limited to:

    a. Nepotism: Scott Denison's relatives, including his daughters, his wife, his mother-in-law and two brother's-in law each received compensation as independent contractors from the DLRCA.;

    b. Scott Denison also received compensation twice for the same time and effort in his role as Manager of DLRCA as well as acting or producing plays produced by an organization which employed his daughters;

    c. A conflict of interest existed due to Denison's role as General Manager of the DLRCA and his financial interest in Fantasy Forum, which performed at the Center. In this and other matters Denison violated Government Code § 87100 and California Code of Regulations §§ 18703 forbidding conflicts of interest.

    d. Certain performing groups received preferential treatment and

CASPER, MEADOWS
& SCHWARTZ
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

paid the DLRCA less compensation than other groups for using DLRCA facilities. Some of these groups employed Denison's relatives;

    e. Denison controlled booking of events at the DLRCA and allocated dates to organizations in which his family was involved to the detriment of other, highly regarded, artistic groups.

    f. The wedding of Denison's daughter occurred at the DLRCA and questions existed about the propriety of the bookkeeping for that event.

    g. The use of the City's Merchant Card Services for the processing of the tuition at the ballet school operated by Denison's mother-in-law;

    h. Denison's use of two sets of books;

    i. An inappropriate financial arrangement with the Diablo Regional Arts Association ("DRAA") in violation of the MOU between the City and DRAA. Denison directed that certain revenue from the Center Rep company, which Denison managed, be placed into the DRAA and that these funds be used to defray certain expenses;

    j. The misuse of donations and the overselling of tickets for certain events.

18. They also expressed concern to Coan about the safety of Center employees. They mentioned Denison's possession of weapons at the workplace, his erratic behavior and fears for their safety which severely impacted the efficient operation of the Center.

19. The Plaintiffs believed that Coan was sympathetic to their concerns. Coan notified City Manager Mike Parness of Plaintiffs' concerns.

CASPER, MEADOWS
& SCHWARTZ
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

Complaint for Violation of Civil Rights     Page 6

20. Defendant Gary Pokorny, Denison's supervisor, had promised Coan that he would not divulge the names of the five complaining Plaintiffs to Denison. Notwithstanding that promise, Pokorny immediately provided Denison with the names of the complaining Plaintiffs.

21. Several of these Plaintiffs spoke with Plaintiff Dennis Lickteig, Audience Services Coordinator at the DLRCA, and described the meeting with Coan.

22. Following presentation of the complaints and Pokorny's decision to provide Denison with the names of the whistleblowers, Plaintiff Denison learned that Dennis Lickteig, the Audience Services Coordinator and direct supervisor of the Ticket Office, was supporting the allegations which Plaintiffs Bell, Didier, Noack, Carter and Murray had raised against Denison.

23. Shortly thereafter, Defendant Denison met with Lickteig to inquire about Lickteig's loyalty to Denison. When Lickteig failed to express undivided loyalty to Denison, Denison became upset, leaving Lickteig unsettled and disturbed.

24. On or about October 24, 2003, Plaintiff Lickteig contacted Coan, indicated his support for Plaintiffs who had met with Coan on October 6, 2003, described his meeting with Denison and expressed concern that Denison was questioning his loyalty to him.

25. The City of Walnut Creek decided to investigate Plaintiffs' complaints, but decided that, notwithstanding the seriousness of Plaintiffs' concerns, the City would not place Denison on leave during the investigations.

26. Plaintiffs also learned that although the City initially confiscated the weapons and removed the firing pins from those weapons, the City thereafter returned the weapons and firing pins to Denison who, once again, kept the weapons in his office.

27. Thereafter Denison began taking actions to create an intolerable working environment for Plaintiffs in retaliation for lodging complaints with City officials about his financial mismanagement. Denison took actions which he believed were reasonably likely to deter Plaintiffs and other DLRCA employees from engaging in similar activity.

28. More specifically, Denison denied Plaintiffs, who worked on the First Floor of the DLRCA to the administrative officers on the Third Floor. This retaliatory action precluded Plaintiffs from carrying out their duties in a proper and efficient manner.

29. Denison also excluded Plaintiffs from important business meetings and scrutinized their activity in a coercive manner which included the recording of phone calls.

30. Denison repeatedly verbally abused, belittled and humiliated Plaintiffs, both privately and in the presence of others.

31. Denison intimidated Plaintiffs by displaying handguns and other weapons in his office.

32. Denison secretly monitored Plaintiffs' e-mail, telephone conversations and their computer files;

33. Denison erased some of the Plaintiffs' computer files without prior notice;

34. Denison implied that he would fire Plaintiff Dennis Lickteig for supporting other Plaintiffs and, with Pokorny, continually sabotaged Lickteig's work product, and undermined his role as middle manager, particularly in Lickteig's control over the Ticket Office and its personnel;

35. Denison's conduct forced Plaintiff Denise Noack to take a stress leave of absence; following her return Denison moved her desk so that Denison and employees loyal to him could continually monitor her actions. Denison also down-graded Noack's position and singled her out by demanding reports from her which he did not demand from others.

36. In furtherance of Denison's campaign of retaliation against those who had complained about him and to deter Plaintiffs and others from lodging further complaints, Denison arbitrarily denied Plaintiffs their legitimate requests for scheduled days off; denied requests for appropriate schedule breaks; denied proper requests for overtime compensation and denied them access to supplies.

37. Denison created particular burdens on Plaintiffs Bell and Didier by changing work schedules; due to these Plaintiffs' family and personal obligations, of which Denison

CASPER, MEADOWS
& SCHWARTZ
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

Complaint for Violation of Civil Rights Page 8

was well aware, he understood that these changes would make the working conditions intolerable for those Plaintiffs. Moreover City officials, including Denison, Pokorny and others, threatened to cut the Ticket Office staff, taking particular aim at Bell and Didier.

38. Denison also altered Plaintiff Bell's responsibilities and denied her family leave to which the law entitled her.

39. Pokorny and other officials, well aware of Plaintiffs' complaints approved of and ratified Denison's retaliatory conduct, while denigrating Plaintiffs' actions.

40. The City retained outside consultants to investigate Denison's workplace misconduct and his alleged financial mismanagement.

41. After obtaining the report addressing Denison's workplace misconduct, Pokorny and other City officials refused to discipline Denison or to find fault with his management of the DLRCA personnel.

42. As a result of the decision to whitewash, approve and ratify Denison's conduct, Plaintiffs Carter and Murray realized that Denison's conduct and the ratification of that conduct by the City and Pokorny had rendered their positions intolerable and untenable. Plaintiff Carter was constructively discharged from his employment on May 19, 2004. Plaintiff Murray was constructively discharged from her employment on February 11, 2004.

43. A forensic accountant the City had retained as an outside consultant also reviewed the business practices of the DLRCA and confirmed the existence of several financial improprieties and fraud, which included Denison's improper handling of receipts related to his daughter's wedding reception held at the center and the preparation of backdated receipts related to Fantasy Forum, in which Denison held an interest. The outside consultant complimented Plaintiffs for their vigilance in raising their allegations.

44. As a result of Plaintiffs' allegations and the reports of the outside consultant, the District Attorney charged Denison with an illegal conflict of interest in violation of California Government Code § 87100. On September 20, 2004, Denison entered a plea of no contest to that charge in the Contra Costa Superior Court.

45. Nonetheless, as of the date of this Complaint, the City has failed to discipline Denison in a manner consistent with his wrongdoing and has thereby condoned his retaliation against Plaintiffs and his financial mismanagement of the DLRCA.

46. As a result of the conduct of Defendants alleged herein, Plaintiffs have sustained general and special damages, including loss of income and emotional distress.

47. The conduct of Defendant Scott Denison was malicious and oppressive and subjects him to exemplary damages for which Plaintiffs pray below.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Retaliation In Violation Of Plaintiffs' First Amendment Rights**
**Against Defendants Denison, Pokorny And Does 1 through 50.**

48. Plaintiffs incorporate paragraphs 1 through 47 of this Complaint as though fully alleged herein.

49. At all times relevant, Plaintiffs were engaging in speech on matters of public concern, specifically Denison's financial mismanagement, the mismanagement of the staff and fears for employee safety at an important public enterprise, the Dean Lesher Regional Center for the Arts.

50. That speech was protected by the First Amendment to the United States Constitution.

51. The City of Walnut Creek is a public entity. All the actions of the named individual Defendants and other officials of the City of Walnut Creek alleged in this action were done under color of law.

52. Motivated by Plaintiff's protected speech, Defendants undertook the retaliatory action described in paragraphs 25 to through 42 of this Complaint.

53. That retaliatory action was motivated by the desire to deter Plaintiffs and other City employees from making any further complaints about Defendant Scott Denison and was reasonably likely to deter Plaintiffs and other from engaging in further protected speech.

**CASPER, MEADOWS & SCHWARTZ**
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

54. Defendants' conduct alleged in paragraphs 25 through 42 of this Complaint violated Plaintiffs' rights protected by the First Amendment to the United States Constitution.

55. As a result of Defendants' misconduct, all Plaintiffs sustained substantial damages and Plaintiffs Carter and Murray were constructively discharged from their municipal employment.

56. The conduct of Defendant Scott Denison was malicious and oppressive and subjects him to exemplary damages for which Plaintiffs pray below.

Wherefore, Plaintiffs seek relief as set forth below.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Retaliation In Violation Of Plaintiffs' First Amendment Rights**
**Against Defendant City of Walnut Creek**

57. Plaintiffs incorporate paragraphs 1 through 56 of this Complaint as though fully alleged herein.

58. At all times relevant, Plaintiffs were engaging in speech on matters of public concern, specifically Denison's financial mismanagement, the mismanagement of the staff and fears for employee safety at an important public enterprise, the Dean Lesher Regional Center for the Arts.

59. That speech was protected by the First Amendment to the United States Constitution.

60. The City of Walnut Creek is a public entity. All the actions of the named individual Defendants and other officials of the City of Walnut Creek alleged in this action were done under color of law.

61. Motivated by Plaintiff's protected speech, the City of Walnut Creek undertook a policy by and through its senior policymakers, acting under color of law, to retaliate against Plaintiffs to punish Plaintiffs for their exercise of protected speech. The City of Walnut Creek's approved of, supported and ratified the retaliatory conduct actions of Scott Denison alleged in this Complaint. The City's policy was to deter complaints

CASPER, MEADOWS
& SCHWARTZ
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

Complaint for Violation of Civil Rights                                    Page 11

against and criticism of Scott Denison whom the City regarded as indispensable and above and beyond criticism and the City's policy was reasonably likely to deter Plaintiffs and other from engaging in further protected speech.

62. The City's policy carried out and ratified through the actions of its senior policy makers as alleged in paragraphs 25 through 42 and 45 of this Complaint violated Plaintiffs' rights protected by the First Amendment to the United States Constitution.

63. As a result of the City's policy, all Plaintiffs sustained substantial damage and Plaintiffs Carter and Murray were constructively discharged from their municipal employment.

Wherefore, Plaintiffs seek relief as set forth below.

**THIRD CLAIM FOR RELIEF**
**Retaliation In Violation Of Public Policy**
**Against All Defendants**

64. Plaintiffs incorporate paragraphs 1 through 63 of this Complaint as though fully alleged herein.

65. Plaintiffs have timely complied with all relevant provisions of the California Tort Claims Act. Plaintiffs have timely filed this action after the City of Walnut Creek denied the government claims submitted by Plaintiffs to the City on July 23, 2004.

66. At all times relevant, Plaintiffs complained to public officials setting forth what they reasonably believed were Scott Denison's violation of State law and regulations and of City policies which violations had harmed the finances of the City of Walnut Creek and threatened the safe and efficient operation of the Dean Lesher Regional Center for the Arts, a City facility. These included, but were not limited to, violations of Government Code § 87100 and California Code of Regulations §§ 18703 forbidding conflicts of interest; Labor Code § 6400 requiring employees to provide a safe workplace and concerns about fraud which arose from Denison's maintenance of separate books; and preferential treatment given family members and family-connected enterprises; the overselling of tickets; the misallocation of funds; the issuance of back-dated checks related to storage charges owed DLRCA by a Denison family enterprise;

CASPER, MEADOWS
& SCHWARTZ
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

the inappropriate use of the City's credit card and other related misconduct which Plaintiffs perceived as highly irregular and perhaps criminal in nature.

67. Officials of the City of Walnut Creek, including, but not limited to Defendants Denison and Pokorny, acting within the course and scope of their employment with Defendant City of Walnut Creek engaged in retaliation against Plaintiffs who had complained to the City violations of State laws and regulations and related matters of public concern detailed above. That retaliation is described in paragraphs 25 through 42 of this Complaint.

68. Because these City officials acted within the course and scope of their employment, the City of Walnut Creek is liable for their misconduct.

69. As a result of Defendants' misconduct, all Plaintiffs sustained substantial damage and Plaintiffs Carter and Murray were constructively discharged from their municipal employment.

70. The conduct of Defendant Scott Denison was malicious and oppressive and subjects him to exemplary damages for which Plaintiffs pray below.

Wherefore, Plaintiffs seek relief as set forth below.

**FOURTH CAUSE OF ACTION**
**Retaliation In Violation of Labor Code § 1102.5**
**Against All Defendants**

71. Plaintiffs incorporate paragraphs 1 through 69 of this Complaint as though fully alleged herein.

72. At all times relevant, Plaintiffs complained to public officials setting forth what they reasonably believed were Scott Denison's violations of State law and regulations which violations had harmed the finances of the City of Walnut Creek and threatened the safe and efficient operation of the Dean Lesher Regional Center for the Arts, a City facility. These included, but were not limited to, violations of Government Code § 87100 and California Code of Regulations §§ 18703 forbidding conflicts of interest; Labor Code § 6400 requiring employees to provide a safe workplace and concerns about fraud which arose from Denison's maintenance of separate books; and

preferential treatment given family members and family-connected enterprises; the overselling of tickets; the misallocation of funds; the issuance of back-dated checks related to storage charges owed DLRCA by a Denison family enterprise; the inappropriate use of the City's credit card and other related misconduct which Plaintiffs perceived as highly irregular and perhaps criminal in nature.

73. Officials of the City of Walnut Creek, including, but not limited to Defendants Denison and Pokorny, acting within the course and scope of their employment with Defendant City of Walnut Creek engaged in retaliation against Plaintiffs who had complained to the City about violations of State laws and regulations detailed above. That retaliation is described in paragraphs 25 through 42 of this Complaint.

74. The actions of these officials violated California Labor Code § 1002.5 which forbids retaliation against employees who complain to government officials about what employees reasonably believe to be violations of State statutes or regulations.

75. Because these City officials acted within the course and scope of their employment, the City of Walnut Creek is liable for their misconduct.

76. As a result of Defendants' misconduct, all Plaintiffs sustained substantial damage and Plaintiffs Carter and Murray were constructively discharged from their municipal employment.

77. The conduct of Defendant Scott Denison was malicious and oppressive and subjects him to exemplary damages for which Plaintiffs pray below.

Wherefore, Plaintiffs seek relief as set forth below.

**FIFTH CAUSE OF ACTION**
**Retaliation In Violation of Labor Code § 6310**
**Against All Defendants**

78. Plaintiffs incorporate paragraphs 1 through 76 of this Complaint as though fully alleged herein.

79. At all times relevant, Plaintiffs complained to public officials setting forth what they reasonably believed were Scott Denison's violations of State law and regulations threatened the safe and efficient operation of the Dean Lesher Regional

CASPER, MEADOWS
& SCHWARTZ
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

Center for the Arts, a City facility. These included, but were not limited to, violations of California Labor Code § 6400 which requires that "Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein."

80. Plaintiffs complained that Defendant Denison's erratic and volatile conduct and his possession of various weapons in his office threatened the safety and well-being of the Center's staff.

81. Officials of the City of Walnut Creek, including, but not limited to Defendants Denison and Pokorny, acting within the course and scope of their employment with Defendant City of Walnut Creek engaged in retaliation against Plaintiffs who had complained to the City about the threat to employee safety. That retaliation is described in paragraphs 25 through 42 of this Complaint.

82. The actions of these officials violated California Labor Code § 6310 which forbids retaliation against employees who complain to government officials about unsafe working conditions.

83. Because these City officials acted within the course and scope of their employment, the City of Walnut Creek is liable for their misconduct.

84. As a result of Defendants' misconduct, all Plaintiffs sustained substantial damage and Plaintiffs Carter and Murray were constructively discharged from their municipal employment.

85. The conduct of Defendant Scott Denison was malicious and oppressive and subjects him to exemplary damages for which Plaintiffs pray below.

Wherefore, Plaintiffs seek relief as set forth below.

WHEREFORE, Plaintiffs seek the following relief:

a. Compensatory damages against all Defendants;

b. Exemplary damages against Defendant Denison;

c. Attorney's fees pursuant to 42 U.S.C. 1988;

///

1      d.    Such other and further relief as the Court deems proper.

3  Dated: September 23, 2004                    /s/
                                             Stan Casper
                                             Thom Seaton
                                             **CASPER, MEADOWS & SCHWARTZ**
                                             Attorneys for Plaintiffs

**CASPER, MEADOWS & SCHWARTZ**
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147